# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GWENN CARTER,**

           **Plaintiff,**

**-vs-**                                                                                                              **Case No. 6:05-cv-1137-Orl-31DAB**

**CITY OF LAKE MARY, RICHARD BEARY, Chief of Police of the City of Lake Mary, OFFICER VIRGIL PICKLESIMER, OFFICER DOE NO. 1, DONALD ESLINGER, Individually and as Sheriff of Seminole County, Florida, DAVID DIGGS, C.O. ROE NO. 1, SEMINOLE COUNTY, FLORIDA, WAL-MART STORES, INC., LOWES HOME CENTERS, INC. & BANK OF AMERICA CORPORATION,**

           **Defendants.**

## ORDER

      The Plaintiff, Gwenn Carter ("Carter"), a victim of identity theft, was arrested on an outstanding felony warrant. She was released from jail soon thereafter when it was discovered that she was not the person responsible for the criminal acts for which the warrant had been issued. She then brought this lawsuit against various law enforcement officials, retailers and a bank, alleging both state and federal causes of action arising out of the circumstances surrounding her arrest.[1] (Doc. 1). This matter is presently before the Court on a Motion to Dismiss filed by Officer Virgil Pickelsimer ("Pickelsimer"). (Doc. 40).[2]

---

[1] Carter's claims against Eslinger, Diggs, Roe, Wal-Mart and Bank of America were all dismissed by previous Orders. (*See* Docs. 50 and 51). The Court has also already dismissed Counts III and IV, (Doc. 46), and dismissed Count XVII as it relates to Seminole County, (Docs. 42 and 43).

[2] Carter's Response appears at Doc. 56.

**I.     Background**

A. Parties[3]

Carter is a resident of Seminole County, Florida.[4] Pickelsimer is a police officer employed by the City of Lake Mary.

B. Facts

On January 25, 2002, Carter's wallet, containing her checkbook, credit cards, driver's license, social security number, and bank card, was stolen from her purse. Carter filed a police report with the Tallahassee (Florida) Police Department, and then closed her bank account. At the time that she filed the police report, Carter was advised that several charges had been made to various cards, including withdrawals from her Bank of America checking account. On January 30 and 31, 2002, two fraudulent checks totaling $700 were written to Wal-Mart on Carter's closed bank account. Also on January 30, 2002, a fraudulent check in the amount of $202.78 was written to Lowe's on Carter's closed bank account. Lowe's and Wal-Mart subsequently filed sworn complaints for worthless checks in the Second Judicial Circuit in Leon County, Florida, alleging that Carter had submitted worthless checks to them. The Leon County Office of the State Attorney filed an Information for passing worthless bank checks, and a capias for Carter was issued on August 19, 2002.

On September 15, 2003, while she was running errands with two of her children, Carter was approached in a store parking lot by Pickelsimer, who stated that, using a moving radar, he had clocked Carter driving at a speed of 41 miles per hour in a 25 miles per hour zone. A short

---

[3] The Court identifies here only those parties relevant to the resolution of this particular matter.

[4] Unless otherwise noted, all future references to "Seminole County" indicate Seminole County, Florida.

time later, Pickelsimer asked Carter if she had ever been in Leon County, and when Carter indicated that she had worked there, Pickelsimer advised Carter that there was an outstanding warrant for her arrest. Carter advised Pickelsimer that she was the victim of identity theft. At some point thereafter, Pickelsimer informed Carter that she was under arrest, and asked if someone was available to pick up her children.[5] Carter told Pickelsimer that she needed to pick up her other three children at a bus stop, and asked if he could follow her to the bus stop, but Pickelsimer refused. Carter then requested that her husband be called to pick up the children.

Shortly thereafter, Carter's husband arrived, and also attempted to explain to Pickelsimer that Carter was the victim of identity theft. Mr. Carter also asked that Pickelsimer wait a few minutes to allow Mr. Carter to go to the Carters' home and retrieve the police report which would indicate that Carter was innocent. Despite the Carters' explanations and offers to retrieve the police report, Carter was arrested and brought to the Seminole County Jail (the "Jail").[6]

Once at the Jail, after being strip-searched, fingerprinted and photographed, Carter asked the corrections officers why she was in jail, and she was told that she was being held for grand theft. Carter advised the corrections officers that she was the victim of identity theft and had not stolen anything.

After Carter was arrested, her husband began to seek to have her released. He was able to get someone at the Tallahassee Police Department to verify to the State Attorney's Office the facts surrounding her case. At 5:55 p.m. on September 15, 2003, an Assistant State Attorney sent a fax

---

[5] Carter asserts that Pickelsimer's tone of voice became very degrading at this point.

[6] Although it is not clear from the contents of the Complaint, given that only one jail facility is mentioned, the Court presumes that the John E. Polk Correctional Facility and the Seminole County Jail are the same facility. Carter alleges that her husband requested that she be brought to the Lake Mary Police Department, which request Pickelsimer also refused.

to the booking section of the Jail, explaining that Carter was the victim of identify theft and requesting that she be released as soon as possible. Carter was ultimately released from jail several hours after her incarceration.[7] The next day, the State Attorney's Office filed a *nolle prosequi* of the charges against Carter.

   C. Claims and Arguments

In Count V of her Complaint, Carter asserts a claim for false arrest under 42 U.S.C. section 1983 ("Section 1983") against Pickelsimer, and alleges that: (1) Pickelsimer had the authority to hold Carter temporarily until he could obtain information which would have revealed that Carter was not the person sought in the warrant; (2) Pickelsimer chose not to put off arresting Carter until exculpatory information was available; (3) Pickelsimer ignored Carter's protestations of innocence; (4) Pickelsimer knew or should have known that Carter's claims of innocence could have been verified by waiting a few minutes for the police report; (5) by choosing to ignore readily available exculpatory information, and by failing to investigate further, Pickelsimer was willfully ignorant of exculpatory information; (6) Pickelsimer was advised of facts and circumstances that would have led a reasonable person to conclude that Carter had not committed a crime and that tended to negate the probable cause arising from the warrant; (7) any investigation by Pickelsimer was so grossly inadequate as to amount to no investigation at all, and constituted a lack of probable cause to arrest Carter; (8) Pickelsimer knew or should have known that his failure to reasonably investigate the situation would lead an innocent person to be arrested; (9) Pickelsimer's acts and omissions were willful, wanton, oppressive, outrageous and deliberately indifferent

---

[7] The parties dispute the timing of her release. Carter asserts that she was released eight hours after being incarcerated. (Doc. 1 at 11). The Defendants assert that Carter was at the Jail for only four hours and 41 minutes. (Doc. 28 at 5). Viewing the complaint in the light most favorable to Carter, the Court presumes for the purposes of this Order that Carter was at the Jail for eight hours.

toward Carter; and (10) as a result of Pickelsimer's acts and omissions, Carter was deprived of her Fourth, Sixth and Fourteenth Amendment rights.

Pickelsimer has moved to dismiss this claim, arguing that: (1) Carter's Complaint fails to state a claim for a violation of both the Sixth and Fourteenth Amendments; (2) Carter has failed to state a claim for a Fourth Amendment violation because Pickelsimer made the arrest pursuant to a facially valid arrest warrant, and thus had probable cause for the arrest; and (3) even if Pickelsimer lacked actual probable cause, he is entitled to qualified immunity because under the circumstances, he had arguable probable cause to arrest Carter.

## II.     Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S.*

*v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id*. (internal citation and quotation omitted).  "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."  *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

**III.    Legal Analysis**[8]

A. Fourth Amendment - Section 1983 False Arrest Claim[9]

The case of *Baker v. McCollan*, 443 U.S. 137 (1979), involved an arrest and detention pursuant to a valid warrant resulting from the plaintiff mistakenly being identified as the person for whom the warrant was issued.  *Id*. at 140-41.  The plaintiff was arrested and taken into custody, where he remained for three days until the error was discovered and he was released.  *Id*. at 141.  The Supreme Court indicated that the plaintiff's complaint was "simply that despite his protests of

---

[8] The Court's legal conclusions in this section are applicable only to Pickelsimer.  Should the necessity arise for the Court to consider the issues of constitutional violations and/or qualified immunity as those issues apply to other Defendants in this action, the Court will make the appropriate findings at that time.

[9] The Court only addresses Carter's Fourth Amendment claim, inasmuch as she tacitly conceded her Sixth and Fourteenth Amendment claims when she failed to respond to Pickelsimer's Motion to Dismiss regarding those issues.  Further, Carter's Complaint only alleges those claims in a conclusory fashion, which would be insufficient to survive a motion to dismiss.  Accordingly, Carter's Sixth and Fourteenth Amendment claims are dismissed.

mistaken identity, he was detained" for three days, after which the validity of his protests was verified. *Id*. at 143-44. The Supreme Court first noted that although the plaintiff was deprived of his liberty, that deprivation was pursuant to a valid warrant, and thus concluded that the plaintiff's allegations gave "rise to no claim under the United States Constitution." *Id*. at 144.[10] More specifically, the Court determined that although "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty without due process of law[,]" but concluded that a detention of three days did not amount to such a deprivation. *Id*. at 145.

The Court then stated that:

[g]iven the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id*. at 145-46.[11] The Court also noted that while the plaintiff's claim of innocence of the charge contained in the warrant was relevant to a tort claim of false imprisonment, it was "largely

---

[10] *See also Hill v. California*, 401 U.S. 797, 802 (1971) ("[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.") (internal citation and quotation omitted).

[11] The Eleventh Circuit has voiced essentially the same standard in cases involving mistaken identities that lead to arrest on otherwise valid warrants. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1348 n.15 (11th Cir. 2002) ("Arresting police officers need not act as judges determining ultimate facts. Trials of guilt or innocence cannot be undertaken by police officers on the side of the road . . . before an officer can effect a lawful arrest pursuant to a valid warrant. . . . There are limits on how much independent investigating an officer must make before executing an arrest warrant, even when the arrested person is asserting a claim of mistaken identity. . . Furthermore, the circumstances that justify a lawful arrest also justify a brief detention incident to the arrest."). In *Rodriguez*, the Eleventh Circuit also explicitly noted that an arresting officer is "not obligated to accept plaintiff's statements [of mistaken identity] as true." *Id*.

irrelevant" to a claim of deprivation of liberty without due process of law, because the "Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted -- indeed, for every suspect released." *Id*. at 145. Ultimately, "[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Id*. (internal citation and quotation omitted).

In the instant case, Carter has not challenged the validity of the warrant pursuant to which she was arrested, and thus the Court presumes that the warrant was facially valid.[12] *See Pickens v. Hollowell*, 59 F.3d 1203, 1206 (11th Cir. 1995). Thus, Carter's false arrest claim against Pickelsimer boils down to the allegation that Carter provided Pickelsimer with exculpatory information to which Pickelsimer failed to give credence, and which Pickelsimer failed to investigate, thereby causing Carter to be arrested pursuant to a presumptively valid warrant. *See Baker*, 443 U.S. at 144. These allegations are not sufficient to state a cause of action against Pickelsimer for a Fourth Amendment violation.[13] *See Pickens*, 59 F.3d at 1208 (plaintiff was arrested pursuant to outstanding warrants for bad checks; plaintiff advised officers of mistaken

---

[12] That a plaintiff's "identifying information was listed on the warrant only because the true suspect made use of [the plaintiff's] stolen identity is irrelevant in determining whether the warrant was sufficiently specific, and thus facially valid." *Fulgencio v. City of Los Angeles*, 131 Fed. Appx. 96, 98 (9th Cir. 2005). It is notable that under Florida law, "[a]n arrest pursuant to a valid warrant, based on probable cause, is an affirmative defense to a false arrest claim." *Card v. Miami-Dade County Fla.*, 147 F. Supp. 2d 1334, 1347 (S.D. Fla. 2001).

[13] "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. The reasons for this broad protection are clear. An arrest is often a stressful and unstable situation calling for discretion, speed, and on-the-spot evaluation. As a result, constabulary latitudinarianism is important, and peace officers are and must be endowed with privileges not accorded to ordinary citizens." *Whirl v. Kern*, 407 F.2d 781, 790-91 (5th Cir. 1968) (internal citations and quotations omitted).

identity, that her purse had been stolen and that she had filed notices of forged checks, yet she was arrested and held for several hours before district attorney dismissed the charges; Court found that plaintiff's argument that officers lacked probable cause notwithstanding valid warrants once she advised them of stolen checks had been foreclosed by *Baker*).[14]

---

[14] *See also Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986) ("[A] police officer's initial finding of probable cause justifies not only arrest, but a reasonable period of continued detention for the purpose of bringing the arrestee before a magistrate. Generally, once the arrest has been properly effected, it is the *magistrate* and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released. . . . [H]aving once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car.") (internal citations omitted; emphasis in original); *Gero v. Henault*, 740 F.2d 78, 84-85 (1st Cir. 1984) (in case of reasonable mistaken identity, "the law does not afford the plaintiff any solace;" in case involving facially valid warrant or probable cause for arrest, only question is whether it was reasonable for arresting officers to believe that person arrested was person sought, and mistaken arrest does not violate Constitutional rights); *Johnson v. City of St. Paul, Minn.*, 634 F.2d 1146, 1147 (8th Cir. 1980) (where plaintiff was arrested pursuant to valid warrant, was held for several hours until posting bail, and it was later discovered that he was not the person sought in the warrant, plaintiff failed to allege a violation of his Constitutional rights); *Cleveland v. City of Detroit*, 275 F. Supp. 2d 832, 839 (E.D. Mich. 2003) ("Even 'an unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to a facially-valid warrant for a few days does not amount to a Constitutional violation.'") (*citing Kennell v. Gates*, 215 F.3d 825, 828 (8th Cir. 2000)); *Gazic v. Pucci*, 1994 WL 201244 at *4 (N.D. Ill. May 17, 1994) (plaintiff was arrested pursuant to parole violation warrant despite repeated protests that he was not on parole; arresting and jailing officers only had a duty to determine facial validity of warrant, not to investigate plaintiff's claims that he was not on parole); *Howard v. Regional Transit Authority*, 667 F. Supp. 540, 546 (N.D. Ohio 1987) ("[I]f a law enforcement officer acts reasonably and consistent with the information obtained from the computer system, then a person who is mistakenly arrested because of such information cannot maintain a cause of action under § 1983. . . . To maintain a cause of action under § 1983 for false arrest or imprisonment due to mistaken identity, the plaintiff must demonstrate either that the arrest warrant was invalid, or that the law enforcement officers acted unreasonably and failed to properly consider the information regarding the outstanding warrant, which they obtained from the computer system."). The cases Carter cites in support of her position are clearly distinguishable, as they do not involve mistaken arrests pursuant to a valid warrant.

C. Qualified Immunity[15]

The Eleventh Circuit has established a two-part analysis for qualified immunity cases. First, the defendant government official must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred[.]" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (internal citation and quotation omitted). Second, once the defendant establishes that he was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal citation and quotation omitted).[16] In conducting this second part of the analysis, a court must determine whether the plaintiff alleged the deprivation of an actual constitutional right and, if so, then determine whether that right was

---

[15] Carter's Response appears to misconstrue the qualified immunity analysis. She first correctly states that in order to receive qualified immunity, an official must demonstrate that he was acting within the scope of his discretionary authority. However, Carter then offers a legal non-sequitur by stating that Pickelsimer is not entitled to qualified immunity because "the Complaint does not allege that Defendant Pickelsimer was acting in his official capacity." (Doc. 56 at 3). Carter thus improperly muddles the "discretionary authority" and the "individual or official capacity" analyses. "Qualified immunity offers complete protection for government officials sued in their *individual capacities* as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (internal citation and quotation omitted) (emphasis supplied). In any event, Carter's assertion that whether Pickelsimer is entitled to qualified immunity because it remains to be decided whether he was sued in his individual or official capacity, (*see* Doc. 56 at 3), is incorrect for two reasons. First, given that Carter alleges that Pickelsimer was acting under color of law, and it appears that Pickelsimer was conducting a traffic stop for the purpose of issuing a citation, it can reasonably be inferred that he was acting *within the scope of his discretionary authority*. Carter does not contest this conclusion in her Response. Second, the caption of Carter's Complaint plainly identifies Pickelsimer as being sued "*individually*." (Doc. 1 at 1) (emphasis supplied). Where Carter sued an official in his official capacity, that distinction is clearly made, as was the case with Donald Eslinger, whom Carter sued "individually, and as Sheriff of Seminole County, Florida." (*Id*.). Thus, because Pickelsimer was acting within the scope of his discretionary authority, and is sued in his individual capacity, he may be entitled to qualified immunity.

[16] Pickelsimer was acting within the scope of his discretionary authority. *See* n.15, *supra*.

clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Vinyard*, 311 F.3d at 1346.

The threshold determination in the qualified immunity analysis is thus whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. Having determined that Carter's allegations against Pickelsimer do not state a claim for a Fourth Amendment violation, the Court's inquiry ends. *Durruthy v. Pastor*, 351 F.3d 1080, 1094-95 (11th Cir. 2003) (where there is no Constitutional violation, court need not address whether the right in question was clearly established). Thus the Court finds that Pickelsimer is entitled to qualified immunity on Carter's claim against him in Count V.

### IV.   Conclusion

Carter has failed to provide any support for her claims against Pickelsimer under the Sixth and Fourteenth Amendment. To succeed in a civil action under Section 1983, a plaintiff must prove a deprivation of a Constitutionally guaranteed right. *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989). Carter has failed to do so. Further, because has she failed to state a claim for a violation of her Fourth Amendment rights, Pickelsimer is entitled to qualified immunity on that claim. Accordingly, it is

**ORDERED THAT** Pickelsimer's Motion to Dismiss Count V (Doc. 40) is GRANTED.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 10, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

...

Copies furnished to:

Counsel of Record
Unrepresented Party